752 So.2d 1100 (1999)
James Earl MAGEE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-CP-01261-COA.
Court of Appeals of Mississippi.
November 16, 1999.
*1101 James Earl Magee, Appellant, pro se.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
BEFORE McMILLIN, C.J., MOORE, AND THOMAS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. James Earl Magee has appealed from an order denying him relief without hearing on his motion for post-conviction relief after having entered a plea of guilty to murder. Magee purports to raise four issues for consideration on appeal; however, our analysis of his brief leaves us persuaded that he has, in fact, raised three issues; namely, (a) that his guilty plea was not knowingly and voluntarily entered since his diminished intellectual abilities prevented him from fully understanding the consequences of such a plea; (b) that his counsel was ineffective in assisting in his defense for counsel's failure to fully advise him of his rights in the event of a trial and for failing to fully investigate the facts of his case before recommending that he plead guilty; and (c) that, at the very least, the trial court erred in denying him an evidentiary hearing at which he would have the opportunity to prove those matters that would demonstrate his entitlement to relief. Finding no reversible error in the manner in which his motion was handled, we affirm.

I.

Facts
¶ 2. On August 17, 1992, Magee entered a plea of guilty in the Circuit Court of Marion County to the charge of murder for wilfully causing the death of a woman with whom he had been romantically involved. The trial court conducted a hearing in open court before accepting Magee's plea and the transcript of that hearing was a part of the record of Magee's post-sentencing motion. On June 2, 1994, Magee filed a pleading entitled "Motion to Vacate Guilty Plea and Sentence and Conviction." Magee alleged in the motion that his right to file such a motion was found in Mississippi's statutes relating to post-conviction relief, and the trial court treated the motion as such. Magee sought authority to withdraw his plea of guilty and require the State to put him to trial on the murder charge. The court denied Magee any relief on his motion by order dated June 22, 1994, and entered on that same day.
¶ 3. It would be an understatement to say that this case has followed a tortured procedural path since the entry of the order in 1994 denying Magee relief on his post-plea motion. However, it is unnecessary for purposes of our decision to trace those proceedings except to note that the Mississippi Supreme Court, by order dated September 8, 1998, permitted Magee an out of time appeal to present to this Court his arguments as to how the trial court erred when it refused to permit him to withdraw his guilty plea some four years earlier.

II.

Appellant's Lack of Mental Capacity to Knowingly and Voluntarily Enter a Plea of Guilty
¶ 4. Magee alleged that his plea of guilty could not possibly have been entered knowingly and voluntarily because his diminished mental abilities prevented him from fully appreciating the consequences *1102 of his action. In support of that argument, Magee relies solely upon his statement during his plea hearing that, while in high school, he "was in like special ed."
¶ 5. In his appeal to this Court, Magee suggests that it is common knowledge that persons relegated to special education classes suffer from "learning impairments and other types of educational dysfunction" such that it ought to be apparent that he could not fully comprehend the consequences of pleading guilty to the crime of murder.
¶ 6. Magee offers no further evidence by way of affidavits, medical records, or school records to suggest that there might be a genuine issue of his mental competency to fully appreciate the effect of entering a guilty plea to the indictment. Neither is the Court cited to any authority that would suggest that evidence that a defendant may have been enrolled in special education classes during high school is sufficient, standing alone, to create a justiciable issue of a defendant's mental competency to enter a guilty plea. No particular level of intelligence or educational attainment must be demonstrated as a prerequisite to a determination that a plea is being offered knowingly and voluntarily. Rather, each case must turn on its own particular facts. In the related context of exclusion of post-arrest confessions, the Mississippi Supreme Court found that a juvenile whose IQ was substantially below average, had an unspecified learning disability, and whose reading skills tested at approximately the second grade level nevertheless had sufficient comprehension to understand and knowingly waive his Miranda rights. McGowan v. State, 706 So.2d 231, 237-38 (Miss.1997). (It is interesting to note that McGowan also had pled guilty and the plea had been accepted; however, on motion of the State, the plea was vacated when McGowan subsequently refused to honor his pledge of cooperation in the prosecution of others implicated in his crimes. Id. at 238-39.)
¶ 7. In this case, Magee admitted at the plea hearing that he could read and that he had both read the indictment and had it read to him. Additionally, he confirmed that his attorneys had fully explored the charges with him and had advised him of the consequences of pleading guilty. The trial court took Magee through a litany of the various rights that he would be waiving by pleading guilty and Magee, in each instance, affirmed his understanding of that right and his desire to waive it. The standard of competency to enter a plea of guilty is the same as that for determining competency to stand trial. Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); Caylor v. State, 437 So.2d 444, 447 (Miss.1983). All that the State must demonstrate as to competency to stand trial is that the defendant has a rational understanding of the charges against him and the ability to assist his lawyer in preparing his defense. Godinez, 509 U.S. at 396, 113 S.Ct. 2680; Caylor, 437 So.2d at 447.
¶ 8. The record shows that the trial court made reasonable inquiry into Magee's competency at the plea hearing before electing to accept his plea. Something more than Magee's assertion that he was assigned to special education classes during his high school career is necessary to raise a legitimate post-plea issue as to his competency to knowingly and voluntarily plead guilty to the charge brought against him in this case.

III.

The Claim of Ineffective Assistance of Counsel
¶ 9. Magee claims that his counsel's performance was so deficient as to have effectively deprived him of the representation guaranteed him under the Sixth Amendment of the Constitution of the United States. He correctly cites to the standard to measure the (in)effectiveness of his attorney's performance as being the case of Strickland v. Washington, 466 U.S. *1103 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 10. However, beyond merely conclusory assertions of the inadequacy of the job done by his attorneys, Magee says only the following:
In the case at hand there was no inquiry of conversations counsel had with Defendant. Appellant's plea of guilty was resultive of counsel's imparting to Appellant that a trial was futile and a guilty plea was essentially all that could be done. Counsel did not advise Appellant to proceed to trial, but advised him to enter a plea of guilty.
¶ 11. During the plea hearing, the trial court embarked on a lengthy course of inquiry with Magee as to his understanding of the difference between a plea of guilty and not guilty and that, if he elected to plead guilty, the choice was solely his. The Court went so far as to inform him that, upon his subsequent arraignment, he had every right, should he so desire at that critical moment and despite all that had preceded his formal arraignment, to enter a plea of not guilty and enjoy all those rights previously explained to him. Magee, at every turn, indicated his full understanding of that right. At that point, the court asked Magee, "So when you enter whatever plea you want to enter, will it be by your free will and done by your own decision?" (emphasis supplied). Magee's reply is unequivocal: "Yes, it will be mine." At no time during this detailed hearing did Magee even intimate that he had been wrongly convinced by his attorneys that a plea of innocent was a futile gesture. In fact, the record of the plea hearing indicates quite convincingly that Magee fully understood his right to demand that the State demonstrate his guilt beyond a reasonable doubt and his right to vigorously contest the State's efforts to do so. To merely allege that, in effect, his attorneys were insufficiently vigorous in their efforts to persuade him to submit to a trial does not raise an issue of ineffective assistance of counsel.

IV.

Failure to Grant an Evidentiary Hearing
¶ 12. Magee alleges that, at the very least, he is entitled to a hearing before the trial court on the issues raised in his motion, since "taking the well pleaded allegations of the complaint as true," he has stated a claim that would entitle him to relief. Apparently, Magee is satisfied that, given a forum, he will be able to develop evidence to demonstrate both (a) his diminished intellect that prevented him from intelligently agreeing to plead guilty, and (b) the lack of diligence of his attorneys that caused him to plead guilty when he would have been better served by their insisting that he submit the issue of his guilt for trial.
¶ 13. Not every movant is entitled to a hearing on the merits of his motion based solely on the proposition that the movant has alleged facts which, if proven, would entitle him to relief. The statutory scheme for resolving motions for post-conviction relief requires the movant to set forth those facts in support of the movant's claim that are within the personal knowledge of the movant, which must be verified under oath of the movant. Miss.Code Ann. § 99-39-9(d) (Rev.1994). In addition, as to those essential facts that are not claimed to be within the movant's personal knowledge, the movant must either demonstrate through exhibits and affidavits that evidence of such facts exists or show good cause as to why such supporting documentation is not attached. Miss.Code Ann. § 99-39-9(e) (Rev.1994). Section 99-39-11(2) states:
If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the prisoner to be notified.
Miss.Code Ann. § 99-39-11(2) (Supp.1999).
¶ 14. In the case before us, Magee's original motion before the trial court alleges *1104 no particular facts known personally to Magee that would tend to establish such a diminished intellectual capacity as to preclude an informed decision to enter a plea of guilty. Neither does he even hint at what further evidence he might present at a hearing on the issue that would tend to support such a finding. As we have already indicated, the mere allegation that a person was enrolled in special education classes during that person's high school career does not make a prima facie case of mental or intellectual incompetency to enter an informed guilty plea to a criminal charge. Thus, as to the issue of Magee's alleged inability to make a reasoned and informed decision to plead guilty, we conclude that the trial court was correct in denying Magee a hearing under Section 99-39-19.
¶ 15. As to the effectiveness of his representation by counsel during the proceedings, Magee's claimed facts known personally to him that would support such a finding center on the notion he was not fully informed of the possibility of going to trial in the hopes of gaining a conviction of the lesser included offense of manslaughter. Of his own personal knowledge, Magee states that he "was never informed that I could have been convicted of manslaughter." Additionally, he states in his motion that his "lawyer refused to investigate the case and did not discover that this was a crime of passion."
¶ 16. Magee, in his motion, seems to be laboring under a misapprehension of the law of manslaughter. Particularly, he seems to have equated "a crime of passion" with a killing committed in the heat of passion. "Heat of passion" killings, classed as manslaughter under our criminal statutes, involve an act committed while the defendant is under a temporary overmastering passion caused by some sudden provocation of sufficient gravity to cause the defendant to act on impulse and without the reflection that might normally precede a decision on whether or not to physically attack another human being. Miss.Code Ann. § 97-3-35 (Rev.1994); Windham v. State, 520 So.2d 123, 127 (Miss.1987); Preston v. State, 25 Miss. 383 (1853). A "crime of passion" is not generally understood as invoking consideration of those issues of law that separate murder from some lesser form of homicide, but is simply a vernacular term to describe some crime committed as an outgrowth of a problematic romantic relationship. While there is ample evidence in the record to indicate that Magee and his victim were undergoing romantic difficulties, there is nothing in the record to suggest that the victim did anything in the moments preceding her death to provoke or arouse sufficient passion or anger in Magee as to cause him to suspend his normal judgment and caution and kill her in a momentary rage.
¶ 17. We are aware of no requirement that suggests the need to affirmatively demonstrate on the record that every possible defense to the charge was investigated and to state the reason why it was rejected as a prerequisite to accepting a plea. This is to be distinguished from defense counsel's duty to actually explore such possible defenses to determine whether they have merit, which is a different proposition. Nevertheless, if defense counsel's ineffectiveness is to be demonstrated in this manner in a post conviction relief proceeding, the movant must do something more than state the obvious proposition that such a defense exists at law and follow that with an unsupported proposition that a vigorous pursuit of such a defense would have resulted in an acquittal or, at the least, conviction of a lesser crime.
¶ 18. Magee's failure to allege such facts as would arguably support a conviction for the lesser crime of "heat of passion" manslaughter and to demonstrate, through his own sworn statement and the affidavits of others, that there was competent evidence to establish those facts must be seen as a fatal flaw in this attack on his attorneys' performance.
*1105 ¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY OF DENIAL OF POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARION COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.