970 So.2d 1291 (2007)
Bruce LAWRENCE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-CP-01389-COA.
Court of Appeals of Mississippi.
May 29, 2007.
Rehearing Denied November 20, 2007.
*1292 Bruce Lawrence (Pro Se), Attorney for Appellant.
*1293 Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
EN BANC.
ISHEE, J., for the Court.
¶ 1. Bruce Lawrence pleaded guilty to the charge of murder in the Circuit Court of Oktibbeha County. Lawrence was sentenced to a term of life imprisonment in the Mississippi Department of Corrections. Lawrence's pro se petition for post-conviction relief was summarily dismissed on July 27, 2006, by the circuit court. Aggrieved by the court's decision, Lawrence appeals asserting three issues: (1) his plea was involuntary, (2) the trial court erred in denying his motion for production of the records, and (3) he received ineffective assistance of counsel. Finding no error, we affirm.

FACTS
¶ 2. On January 24, 2003, Lawrence was indicted by an Oktibbeha County grand jury for murder and felony D.U.I., having been convicted of D.U.I. on two prior occasions. Mark Williamson, appointed counsel for Lawrence, assisted him with completing the petition to enter a plea of guilty to the charge of murder. In the petition, Lawrence acknowledged that he was entering a blind plea to the crime of murder, and that, if convicted, he could be sentenced to a minimum of life imprisonment and/or a fine in the amount of zero to $10,000. Lawrence also acknowledged that he read and understood the constitutional rights he waived by pleading guilty, specifically, the right to take the witness stand at his sole option and the right to use the power and process of the court to compel the production of any evidence, including the attendance of any witness in his favor. Lawrence attested that he was entering a plea of guilty freely and voluntarily and of his own accord with a full understanding of all matters set forth in the indictment and the plea petition. Furthermore, Lawrence acknowledged that his attorney was fully informed as to all of the facts and circumstances surrounding his case, and that counsel did all that anyone could do to counsel and assist him and that, though counsel told him he might receive probation or a lighter sentence, counsel's prediction was not binding on the court.
¶ 3. The circuit court accepted Lawrence's guilty plea during a hearing held on April 27, 2004, whereupon the State had rested its case-in-chief and Lawrence then petitioned to change his original plea of not guilty to guilty. The judge explained to Lawrence that he possessed the following rights: (1) the right not to plead guilty; (2) the right to a speedy, public trial by a jury; (3) the presumption of innocence; (4) the right to confront his accusers; (5) the right to testify in his own defense, if he chose to do so; and (6) the right to call witnesses and have those witnesses appear and testify on his behalf. The judge further explained to Lawrence that, by entering a plea of guilty he waived the aforementioned rights. Lawrence responded that he understood. Lawrence testified that he and his attorney reviewed his petition to enter a plea of guilty and that he understood the information contained in the petition and that he had no questions regarding the petition. He testified that he understood the nature of the crime with which he was charged, as well as any possible defenses. Lawrence testified he understood there was only one sentence for the crime of murder, that being life imprisonment, and that the judge could impose a fine of up to $10,000. Lawrence testified that no one forced him into pleading guilty. He also testified that his attorney went over his case with him, *1294 and that he was satisfied with the advice and assistance of his attorney.
¶ 4. At this stage of the hearing the court read the indictment of the murder charge to Lawrence, which stated, "on or about September 28, 2002, in Oktibbeha County, Mississippi, Lawrence did willfully, unlawfully, and feloniously and with the deliberate design to affect death, that is with malice aforethought, kill and murder a human being, Lillian Ingram a/k/a Frankie, without authority of law and not in necessary self-defense." Lawrence then admitted that he was guilty of the charge and the court accepted the plea of guilty, finding Lawrence competent to understand the nature of the charges against him and the consequences of his plea of guilty. The court sentenced Lawrence to the only sentence by law that could be imposed, that being a term of life imprisonment in the custody of the Mississippi Department of Corrections. The court further noted that the plea of guilty was being made during the course of the trial, and after the State had rested its case-in-chief and the evidence for the State had been presented. The court then heard and sustained motions pending in companion cases involving Lawrence at which time the State requested the court retire to the file the charge of felony D.U.I. and simple assault on a police officer.

STANDARD OF REVIEW
¶ 5. In reviewing the trial court's decision to deny a motion for post-conviction relief, the standard of review is clear. The trial court's denial will not be reversed absent a finding that the trial court's decision was clearly erroneous. Smith v. State, 806 So.2d 1148, 1150(3) (Miss.Ct. App.2002) (citing Kirksey v. State, 728 So.2d 565, 567(8) (Miss.1999)). However, where questions of law are raised the applicable standard of review is de novo. Pace v. State, 770 So.2d 1052, 1053(4) (Miss.Ct.App.2000).

ISSUES AND ANALYSIS
I. Whether Lawrence's plea of guilty was involuntary.
¶ 6. Lawrence argues that his court-appointed counsel induced him to change his plea to guilty after the State had presented and rested its case-in-chief by stating that Lawrence would only receive a twenty-year sentence for murder. Attached to Lawrence's brief is a handwritten letter subscribed by his sister stating that her brother's attorney told her and Lawrence that Lawrence would get twenty years if he did not testify and entered a guilty plea. The letter was not witnessed or notarized. Lawrence submitted a reply brief with an amended letter that states the letter from his sister was notarized "on the back;" however, the notary's seal was on a separate sheet of paper. This letter from Lawrence's sister was the only evidence submitted to support the contention that counsel stated Lawrence would receive a twenty-year sentence if he entered a plea of guilty to the charge of murder. However, the record is replete with evidence that Lawrence was fully advised and understood the consequences of changing his plea from not guilty to guilty at the conclusion of the State's case-in-chief on the charge of murder. The petition submitted by Lawrence specifically states the sentence to be imposed for a guilty plea to murder would be life imprisonment with the possibility of a fine from zero to $10,000. Furthermore, the transcript of the plea hearing reflects the court's questioning of Lawrence regarding the consequences of entering a plea of guilty and that the only sentence to be imposed to such plea to murder was life imprisonment.
*1295 ¶ 7. Where erroneous legal advice on sentencing has been given to a defendant by his counsel and/or defendant relied on assertions or predictions made by his counsel, no error attaches if the record affirmatively shows the defendant was correctly advised of his peril by the sentencing court. Roland v. State, 666 So.2d 747, 749-50 (Miss.1995). In some cases, however, mistaken advice from counsel can vitiate a guilty plea. Gardner v. State, 531 So.2d 805, 809 (Miss.1988). In Gardner, the court stated the thoroughness by which the lower court had interrogated Gardner at the time his guilty plea was tendered was the most significant evidence. Id. The court then determined regardless of the instructions or advice defendant may have received from counsel, the thoroughness of the lower court's questioning at the sentencing hearing was sufficient to render the plea voluntary. Id. at 810 (citing Sanders v. State, 440 So.2d 278, 284 (Miss.1983)). Having reviewed the petition and the transcript from the sentencing hearing, it is clear in this case that Lawrence was thoroughly questioned and fully advised of his potential sentence by the trial court and that his plea was entered voluntarily. Therefore, this issue is without merit.
II. Whether the trial court erred in denying Lawrence's motion for production of records.
¶ 8. Lawrence argues that the trial court should not have denied his motion for production of records, specifically his request for the transcript of his partial trial. Lawrence contends that with the records which were denied he would be able to show that his murder was a "crime of passion."
¶ 9. In Fleming v. State, 553 So.2d 505, 506 (Miss.1989), the court stated where a prisoner has filed a proper motion pursuant to the Uniform Post-Conviction Collateral Relief Act, and whose motion has withstood summary dismissal under section 99-39-11(2), then that individual may be entitled to trial transcripts and other relevant documents under the discovery provision in section 99-39-15, upon good cause shown and under the discretion of the lower court. Fleming, 553 So.2d at 506. Lawrence's motion did not withstand summary dismissal, however Lawrence was still provided with the transcript of his guilty plea and other relevant documents pertaining to his motion for post-conviction collateral relief. Lawrence's petition is similar to that in Roland, where Roland failed to show good cause that the additional records he sought were of any relevance to the issues raised in his petition. Roland, 666 So.2d at 751. As in Roland, there is no indication here that the trial judge abused his discretion in denying Lawrence's request for production of records. Furthermore, it is apparent that Lawrence seeks to attack his conviction and sentence via the means of a post-conviction collateral relief motion in that he now seeks to use the partial transcript to persuade the court that he is not guilty of murder but rather a "crime of passion." Lawrence waived the right to directly appeal the conviction of murder when he entered his plea of guilty. However, the Court will address his claim that he committed a crime of passion only to clarify Lawrence's position that if he was guilty of a "crime of passion," then he could be sentenced to the lesser offense of manslaughter.
¶ 10. Lawrence's argument is similar to the that made in Magee v. State, 752 So.2d 1100, 1104(15) (Miss.Ct.App.1999), where Magee appealed for post-conviction relief after entering a plea of guilty to murder and argued ineffective assistance of counsel under the belief that facts known to Magee personally would support the lesser *1296 charge of manslaughter and that his attorney had not informed him of the possibility of such a charge. Magee, 752 So.2d at 1104(¶ 15). This Court stated Magee had misunderstood the law of manslaughter, and was equating a "crime of passion" with a killing in the heat of passion, which Lawrence seems to have done as well. Id. This Court explained that "heat of passion" killings, classed as manslaughter under our criminal statutes, involve an act committed while the defendant is under a temporary overmastering passion caused by some sudden provocation of sufficient gravity to cause the defendant to act on impulse and without the reflection that might normally precede a decision on whether or not to physically attack another human being. Id. (citing Miss.Code Ann. § 97-3-35 (Rev.2006); Windham v. State, 520 So.2d 123, 127 (Miss.1987); Preston v. State, 25 Miss. 383 (1853)). This Court further explained that a "crime of passion" is not understood to invoke the aforementioned consideration of the issues of law that separate murder from a lesser homicide, rather it is merely a vernacular term often used to describe a crime committed as a consequence of a problematic romantic relationship. Magee, 752 So.2d at 1104(16). Here, as in Magee, the record contains ample evidence to show that Lawrence and his victim were experiencing romantic difficulties; however, there is nothing to suggest that the victim did anything in the moments prior to her death to provoke or arouse sufficient passion to cause Lawrence to suspend his normal judgment and caution and kill the victim in a moment of rage. This issue is without merit, and finding no error in the lower court's decision to deny Lawrence's motion for production of records, we affirm.
III. Whether he received ineffective assistance of counsel.
¶ 11. Lawrence argues he received ineffective assistance of counsel because, according to Lawrence, counsel told him that if he entered a guilty plea to murder that Lawrence would receive a sentence of twenty years. The test for ineffective assistance of counsel is well known and requires a showing of deficiency in the performance of counsel and prejudice to the defendant. Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Stringer v. State, 454 So.2d 468, 476-77 (Miss.1984). To bring a successful claim for ineffective assistance of counsel, pursuant to the court's ruling in Strickland, the defendant must prove that his attorney's overall performance was deficient and that this deficiency deprived him of a fair trial. Strickland, 466 U.S. at 689, 104 S.Ct. 2052; Moore v. State, 676 So.2d 244, 246 (Miss.1996) (citing Perkins v. State, 487 So.2d 791, 793 (Miss.1986)). We must be mindful of the "strong but rebuttable presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic." Covington v. State, 909 So.2d 160, 162(¶ 4) (Miss.Ct.App.2005) (quoting Stevenson v. State, 798 So.2d 599, 602(¶ 6) (Miss.Ct.App.2001)). To overcome this presumption, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052; Woodson v. State, 845 So.2d 740, 742(¶ 9) (Miss.Ct.App.2003).
¶ 12. Lawrence asserts that were it not for counsel's recommendation, Lawrence would have continued with the trial. There is nothing in the record to support this contention. Furthermore, there is ample evidence to support the lower court's finding that Lawrence knew and understood that by entering a plea of guilty to the charge of murder there was but one sentence the court could impose, *1297 that being a term of life imprisonment. Lawrence attested on his petition to enter his guilty plea that he knew and understood the consequences of entering such plea, as well as testifying in open court to the same. Solemn declarations in open court by the defendant carry a strong presumption of verity. Roland v. State, 666 So.2d 747, 750 (Miss.1995) (citing Baker v. State, 358 So.2d 401, 403 (Miss.1978)).
¶ 13. The Court will only address one of Lawrence's specific arguments that he was denied effective assistance of counsel. Lawrence asserts he received ineffective assistance of counsel because a conflict of interest existed because his attorney had represented the victim on several occasions. In Smith v. State, 666 So.2d 810, 812 (Miss.1995), the court said the right of effective assistance of counsel encompasses the right to representation by an attorney who does not owe conflicting duties to other defendants. Smith, 666 So.2d at 812 (citing Stringer v. State, 485 So.2d 274, 275 (Miss.1986)). Again, under Strickland, Lawrence must show that his attorney was faced with an actual conflict of interest. Secondly, he must demonstrate that his attorney actively represented a conflicting interest and that an actual conflict of interest adversely affected his attorney's performance. Manning v. State, 726 So.2d 1152, 1167-68(26) (Miss.1998) (citing Strickland, 466 U.S. at 692, 104 S.Ct. 2052; Smith 666 So.2d at 812-13). Lawrence merely states that his counsel had represented the victim on several occasions. The victim was dead and it cannot be said that Lawrence's attorney was actively representing a conflicting interest or, in the alternative, that there had been an actual conflict of interest that adversely affected his attorney's performance.
¶ 14. We find nothing in the record to support Lawrence's claim that he received ineffective assistance of counsel. In the petition to enter a plea of guilty, Lawrence acknowledged that his attorney was fully informed as to all of the facts and circumstances surrounding his case and that he did all that anyone could do to counsel and assist him. Furthermore, during the guilty plea hearing, Lawrence testified that his attorney went over his case and reviewed the petition with him, and that his attorney explained to him the charge of murder, as well as possible defenses. Lawrence further testified that he was satisfied with the legal advice and help provided by his attorney.
¶ 15. We give "[g]reat weight . . . to statements made under oath and in open court during sentencing." Sanchez v. State, 913 So.2d 1024, 1027(¶ 8) (Miss.Ct. App.2005) (quoting Young v. State, 731 So.2d 1120, 1123(¶ 12) (Miss.1999)). Statements made during guilty plea hearings are made under oath; as such, "[t]here should be a strong presumption of validity." Id. (quoting Mowdy v. State, 638 So.2d 738, 743 (Miss.1994)). Consequently, the Court is not persuaded by Lawrence's argument that his attorney's representation was deficient, nor that Lawrence did not receive a fair trial because of any deficiency in his attorney's representation. This issue is without merit.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY DISMISSING THE MOTION FOR POST-CONVICTION COLLATERAL RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.