# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CP-00096-COA

**TYSHEKA GORDON A/K/A TYSHEKA S. GORDON A/K/A TYSHEKA CHARMAINE GORDON**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/2018 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | TYSHEKA GORDON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA H. TEDDER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 09/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND C. WILSON, JJ.**

**C. WILSON, J., FOR THE COURT:**

¶1. On November 4, 2015, Tysheka Gordon pled guilty to one count of aggravated domestic violence and one count of aggravated assault of a law enforcement officer. Following a hearing, the Jones County Circuit Court accepted Gordon's plea and sentenced Gordon on both counts. Gordon subsequently filed a motion for post-conviction relief (PCR) in the circuit court, asserting that her convictions should be overturned and set aside due to (1) lack of competency to enter a voluntary guilty plea and (2) ineffective assistance of counsel. Following review, the circuit court found Gordon's PCR motion lacked merit and

summarily denied relief. Gordon filed a motion for reconsideration, and the circuit court denied that motion as well. Gordon now appeals the circuit court's denial of her PCR motion. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY

¶2. This matter stems from two separate crimes, the first occurring on March 4, 2014. On that day, Gordon and her boyfriend got into a dispute in the Piggly Wiggly parking lot. When Gordon's boyfriend tried to leave the store in Gordon's car, Gordon, who had gotten into the backseat of the car, shot him in the back of the head. Gordon was arrested for aggravated domestic violence.

¶3. Just over one month later, on April 14, 2014, Gordon attacked a correctional officer while being held in the Jones County jail. Gordon, admittedly unprovoked, stabbed the officer in the face multiple times with two pieces of metal. As a result of this incident, Gordon was charged with aggravated assault of a law enforcement officer.

¶4. Grand juries indicted Gordon on both offenses: one count of aggravated domestic violence and one count of aggravated assault of a law enforcement officer. The court appointed public defender John A. Piazza to represent Gordon. Following his appointment, Piazza filed a motion for psychiatric examination. In his motion, Piazza stated that he had "reason to believe [Gordon] suffers from some mental disease, injury or deficiency which could render [her] incapable of assisting in preparation of [her] defense of the cause against [her], or in standing trial on said cause."[1] The circuit court granted Piazza's motion and

_____

[1] Through counsel, Gordon also filed a "Notice of Insanity Defense." She later withdrew her initial plea of not guilty.

2

ordered Gordon to be examined by Dr. Criss Lott, a clinical and forensic psychologist, on February 17, 2015, at 7 a.m. According to the court's order, the purpose of the evaluation was:

> (a) To describe [Gordon's] mental state at the time of the alleged offense(s) with respect to her ability to know the nature and quality of her acts and to know the difference between right and wrong in relation to her alleged acts at that time.

> (b) To describe any mitigating circumstances; especially whether the offense with which [Gordon] [wa]s charged was committed while she was under the influence of extreme mental or emotional disturbance; and whether her capacity to appreciate the criminality of her conduct or to conform her conduct to the requirements of the law was substantially impaired.

> (c) To determine [Gordon's] capacity to understand and to knowingly, intelligently, and voluntarily waive or assert her constitutional rights.

> (d) To determine whether [Gordon] waived her constitutional rights during the interview conducted on May 17, 2013.

¶5. On February 21, 2015, Dr. Lott submitted a thorough twenty-three page letter to the circuit court reporting the results of his evaluation of Gordon. In his letter, Dr. Lott gave the following opinions:

> 1. **Regarding Competency:**
> It is my opinion, to a reasonable degree of psychological certainty, that although Ms. Gordon appears to have a history of mental illness, she has the sufficient present ability to confer with her attorney with a reasonable degree of rational understanding in preparation of her defense and she has rational as well as factual understanding of the nature and object of the legal proceedings against her.

> She understood her charges, but she did not know the maximum penalties. She became visibly upset when discussing the possible penalties, as she insisted that she had acted in self-defense when she shot her boyfriend. She was familiar with the roles of the major participants in Court. She understands her right to testify, and she appears to have a reasonable understanding of the plea

3

process.

## 2. **Regarding Sanity:**

It is my opinion that Ms. Gordon suffers from a genuine mental illness, but her alleged behavior at the time of her shooting her boyfriend was not predicated on a mental illness and she would have had the ability to know the nature and quality of her actions and to know the difference between right and wrong in relation to her actions at that time. Ms. Gordon denied experiencing any unusual perceptions at that time and repeatedly insisted that she acted in self-defense.

I am unable to render an opinion with certainty regarding her assaulting the officer in the jail. It appears that her behavior was unprovoked and may have been the predicated on her mental illness. The jail staff reported that she attacked the officer for no apparent reason and the video appears to support this fact. When asked about this incident, Ms. Gordon said she did not know why she assaulted the officer. She denied hearing any command hallucinations telling her to harm him or anyone else in the jail. She also denied believing that he was about to harm her.

## 3. **Regarding Mitigating Factors:**

It is my opinion that Ms. Gordon was under the influence of extreme mental and emotional disturbance at the time she shot her boyfriend, as she alleged that he had physically abused her and had threatened to kill her.

It is my opinion that M[s]. Gordon may have been under the influence of extreme mental and emotional disturbance at the time she assaulted the officer in the jail, as her behavior may have been predicated on her mental illness.

It appears that Ms. Gordon has been suffering from a severe mental illness since returning from the military, and her psychological condition has been further compromised by her reported substance abuse.

Ms. Gordon also appears to have several other non-statutory mitigating factors, including her history of childhood abuse and neglect and her history of problems with impulse control as a child and adolescent.

## 4. **Regarding Waiver of Rights:**

Ms. Gordon had no difficulty comprehending her rights at the time of this evaluation. She said that she was informed of her rights at the time of her arrests, and videos of the interviews corroborated this fact.

It is my opinion that she would have had the capacity to understand and knowingly, intelligently and voluntarily waive constitutional rights at the time of her arrests and interviews, and she has the capacity to waive her rights at the present time.

Overall, Dr. Lott found that Gordon "appeared well-stabilized at the time of t[he] evaluation and capable of proceeding with her case."

¶6.     After Dr. Lott's February 2015 letter to the circuit court, Gordon's counsel requested an independent medical evaluation (IME) by Dr. Mark Webb, a psychiatrist. Dr. Webb evaluated Gordon on July 28, 2015, and subsequently provided the court and the parties with his medical report. In his report, Dr. Webb opined:

> I would agree with Dr. Lott . . . that Ms. Gordon is competent to stand trial and is not criminally insane. She knew the quality of her actions at the time of the alleged offense and knew the difference between right and wrong. She is looking forward to a trial date of September and is working with her attorney. Upon release, she could benefit from treatment at a local mental health center.
>
> . . . .
>
> In conclusion, Ms. Gordon is oriented and alert and is good with details about the incident. . . . She is competent to stand trial and is not criminally insane.

¶7.     On November 2, 2015, Gordon filed a petition to enter a plea of guilty to the charges of aggravated domestic violence and aggravated assault on a law enforcement officer. In her petition, Gordon indicated that she understood that she could plead "not guilty" and further understood the constitutional rights that she was waiving by choosing not to plead "not guilty." Piazza signed the certificate of service for Gordon's petition and indicated that he had fully explained to Gordon the allegations contained within her indictments as well as the maximum penalties for her charges. Piazza also indicated that he considered Gordon to be

5

competent to understand the charges against her.

¶8. On November 4, 2015, the circuit court held a competency hearing for Gordon. At the hearing, the State entered both Dr. Lott's and Dr. Webb's reports into evidence. Gordon testified that she was provided with a copy of both reports. She also testified that she discussed the doctors' opinions as well as her related constitutional rights with Piazza and that it was her desire to enter a guilty plea. Based on Dr. Lott's and Dr. Webb's reports and Gordon's testimony, the circuit court found: (1) Gordon would have had the ability to know the nature and quality of her actions at the time of the two offenses and that she did know the difference between right and wrong, (2) Gordon presently had sufficient mental capability to confer with her attorney with a reasonable degree of rational understanding in preparation of her defense, and (3) Gordon had rational as well as factual understanding of the nature of the proceedings against her and was capable of assisting in her own defense.

¶9. Following Gordon's competency hearing, the circuit court conducted a hearing on Gordon's petition to enter a plea of guilty. Gordon testified that it was her desire to change her plea on both charges from not guilty to guilty. Gordon testified that she understood that she was waiving her right to a trial by jury, her right to testify in her own defense, her right of confrontation of witnesses, and the right to appeal from her guilty plea. Gordon further testified that she was satisfied with Piazza's representation and that she felt like he had done the things reasonably necessary to defend her. The State then testified as to its proof on both charges against Gordon, and Gordon confirmed the facts that the State presented to the court. The court accepted Gordon's guilty plea to one count aggravated domestic violence and one

count aggravated assault on a law enforcement officer and found there was factual basis to support her pleas for each crime. On the aggravated domestic-violence charge, the court sentenced Gordon to fifteen years with ten years to be served in full-time custody of the Mississippi Department of Corrections (MDOC) and five years suspended on the condition that Gordon successfully complete post-release supervision and a community service program. On the aggravated assault of a law enforcement officer charge, the court sentenced Gordon to fifteen years with ten years to be served in full-time custody of the MDOC. The court furthered ordered that Gordon's sentences run consecutively and that Gordon pay court costs of $765, a public defender fee of $1,000, and a fine of $1,000, totaling $2,765.

¶10. On November 22, 2017, Gordon filed a motion for PCR in the Jones County Circuit Court.[2] Gordon asserted that her convictions should be overturned and set aside due to (1) lack of competency to enter a voluntary guilty plea and (2) ineffective assistance of counsel. That same day, the circuit court entered an order denying Gordon's PCR motion and finding that Gordon "failed to provide the [c]ourt with any form of evidence or support for her allegations." The circuit court further noted Dr. Lott's and Dr. Webb's findings in their respective examinations of Gordon.

¶11. On December 22, 2017, Gordon filed a motion for reconsideration of her PCR

---

[2] Gordon's PCR motion was titled "Notice of Appeal," but given the substance of the document, the circuit court treated it as a PCR motion. For reasons unclear from the record, Gordon's motion was filed on November 22, 2017, but Gordon actually signed and dated the motion on October 29, 2017.

motion.[3] The circuit court denied Gordon's motion for reconsideration on January 5, 2018, again finding that Gordon failed to provide the court with any evidence in support of her allegations. The circuit court also found that Gordon failed to satisfy the two-prong test for an ineffective assistance of counsel claim as set forth in *Strickland v. Washington*, 466 U.S. 688, 687 (1984).

¶12. On January 11, 2018, Gordon appealed the denial of her PCR motion.[4] On appeal, Gordon makes the same assertions that she made in her PCR motion; she asserts that her convictions should be overturned and set aside due to (1) lack of competency to enter a voluntary guilty plea and (2) ineffective assistance of counsel.[5] We address these points in turn.

STANDARD OF REVIEW

¶13. "When reviewing a circuit court's denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Gunn v. State*, 248 So. 3d 937, 941 (¶15) (Miss. Ct. App. 2018) (quoting *Berry v.*

---

[3] The record indicates that following the denial of Gordon's initial PCR motion, Gordon filed a "Motion for Post-Conviction Relief and Legal Brief" and a "Motion for Reconsideration for Post-Conviction Relief and Legal Brief." Although only one of the documents, the motion for reconsideration, is actually in the record, according to the circuit court, these documents are "verbatim the exact same pleading."

[4] Gordon's appeal is file stamped January 11, 2018, by clerk of the Mississippi Supreme Court. It is also file stamped January 23, 2018, by the Jones County circuit clerk.

[5] Although Gordon lists eight issues, each of the issues each relate to these two contentions.

*State*, 230 So. 3d 360, 362 (¶3) (Miss. Ct. App. 2017)).

DISCUSSION

¶14.    Although not raised, we must first address the issue of whether this Court has jurisdiction to consider Gordon's appeal.  *See Michael v. Michael*, 650 So. 2d 469, 471 (Miss. 1995) ("Whether raised by the parties or not, this Court is required to note its own lack of jurisdiction.").  "A timely-filed notice of appeal is a jurisdictional prerequisite to invoking this Court's review."  *Massey v. Oasis Health & Rehab of Yazoo City LLC*, 269 So. 3d 1242, 1249 (¶13) (Miss. Ct. App. 2018).

¶15.    Here, the circuit court entered its order denying Gordon's PCR motion on November 22, 2017.   Thirty days later, on December 22, 2017, Gordon filed a motion for reconsideration.  Applying the time standards outlined in Mississippi Rule of Civil Procedure 59(e), Gordon's motion for reconsideration was untimely, and, under Mississippi Rule of Appellate Procedure 4(a), Gordon's time for appeal was not tolled by her post-trial motion. Because Gordon did not file her notice of appeal until January 11, 2018, six days after the circuit court denied her motion for reconsideration but well past thirty days after the circuit court denied her PCR motion, Gordon's appeal is untimely.

¶16.    Nonetheless, the State did not object to the timeliness of Gordon's motion for reconsideration or notice of appeal, and we are bound to follow the Mississippi Supreme Court's holding in *Wilburn v. Wilburn*, 991 So. 2d 1185 (Miss. 2008).  In *Wilburn*, our Supreme Court treated an appeal as timely and exercised jurisdiction, even though the appeal was untimely because the appellant filed her Rule 59(e) motion a day late.  *Id.* at 1190-91

9

(¶¶11-13). "In substance, it appears that the Supreme Court *deemed* [the appellant's] Rule 59 motion timely because [the appellee] failed to raise the issue in the chancery court, which meant that her appeal was also timely and that the Court had appellate jurisdiction." *Massey*, 269 So. 3d at 1251 (¶18) (citing *Wilburn*, 991 So. 2d at 1191, 1194-95 (¶¶12-13, 20-25)); *see also Brown v. Blue Cane Cowart Tippo Water Assoc. Inc.*, 2018-CA-00242-COA, 2019 WL 2353421, at *4 (¶23) (Miss. Ct. App. June 4, 2019); *Walker v. May*, 166 So. 3d 613, 614-15 (¶¶5, 9) (Miss. Ct. App. 2015). Aside from *Wilburn*, this Court also has the ability "to suspend the requirements of appellate rules in the interest of justice." *Campbell v. State*, 126 So. 3d 61, 64 (¶5) (Miss. Ct. App. 2013) (discussing M.R.A.P. 2(c)). "This Court may suspend Rule 4(a) to allow an out-of-time appeal in criminal cases and 'civil' PCR actions." *Id.* Accordingly, we address the merits of Gordon's appeal.

### I. Lack of Competency to Enter a Voluntary Guilty Plea

¶17. Gordon first asserts that she lacked the competency to enter a voluntary guilty plea. We disagree. "The standard of competency to enter a plea of guilty is the same as the competency to stand trial." *Gross v. State*, 954 So. 2d 438, 439 (¶5) (Miss. Ct. App. 2006) (citing *Magee v. State*, 752 So. 2d 1100, 1102 (¶7) (Miss. Ct. App.1999)). To stand trial, the accused must have a "rational understanding of the charges against h[er] and the ability to assist h[er] lawyer in preparing h[er] defense." *Id.* The law presumes that the accused is competent, and the accused bears the burden to prove otherwise, by substantial evidence. *Pitchford v. State*, 240 So. 3d 1061, 1067 (¶32) (Miss. 2017).

¶18. Here, Gordon presents no evidence that she was not competent to voluntarily plead

guilty. To the contrary, record evidence indicates that Gordon was competent. Both Dr. Lott and Dr. Webb, a psychologist and a psychiatrist, evaluated Gordon prior to her guilty plea. The circuit court held a competency hearing for Gordon, and the State entered Dr. Lott's and Dr. Webb's reports as exhibits at the hearing. In their reports, both doctors opined that Gordon was competent to stand trial. According to Dr. Lott, Gordon had "the sufficient present ability to confer with her attorney with a reasonable degree of rational understanding in preparation of her defense[,] and she ha[d] rational as well as factual understanding of the nature and object of the legal proceedings against her."

¶19. Gordon also testified at her competency hearing. Gordon confirmed that she had discussed Dr. Lott's and Dr. Webb's reports in detail with Piazza, including what the reports meant in relation to her constitutional rights. And Gordon confirmed that it was her desire to enter a guilty plea. Based on the evidence and testimony before it, the circuit court found that Gordon was competent to proceed with her guilty plea. We agree.

¶20. We too find that Gordon's plea was voluntary. "For a plea to be voluntary, knowing, and intelligent, the judge must advise the defendant of h[er] rights, the nature of the charge against h[er], and the consequences of h[er] plea, including applicable minimum and maximum sentences." *Worth v. State*, 223 So. 3d 844, 850 (¶19) (Miss. Ct. App. 2017). Following Gordon's competency hearing, the circuit court held a plea hearing for Gordon. During the plea hearing, the circuit judge reviewed Gordon's rights with her. Gordon testified that she understood the rights that she was waiving and that she wished to proceed with her plea. Gordon also testified that she agreed with the facts presented by the State and

11

that she understood the minimum and maximum sentences for her charges. Accordingly, the record indicates that Gordon was competent to plead guilty and that her plea was voluntary. This issue lacks merit.

## II. Ineffective Assistance of Counsel

¶21. Gordon next asserts that Piazza provided her with ineffective assistance of counsel. According to Gordon, Piazza refused to take her case to trial to show (1) that she "did not possess the requisite intent to commit the crimes for which [she] was accused" and (2) "that [she] was not competent to stand trial because of [her] paranoid delusions and mental health issues . . . ." Gordon also contends that Piazza coerced her to plead guilty by threatening her that she would receive an eighty-year sentence if she went to trial. We find that Gordon's ineffective assistance of counsel claim lacks merit.

¶22. To prove ineffective assistance of counsel, Gordon must show (1) that her counsel's performance was deficient, and (2) that her counsel's deficiency prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). As this Court set forth in *Worth*, 223 So. 3d at 849-50 (¶17),

> A voluntary guilty plea waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea. Thus, to obtain post-conviction relief, a petitioner who pled guilty must prove that his attorney's ineffective performance proximately caused the plea—i.e., that but for counsel's errors, the petitioner would not have entered the plea. This requires proof beyond the petitioner's own conclusory assertions.

(Citations and internal quotation mark omitted).

¶23. Here, Gordon again fails to set forth anything more than her "own conclusory

assertions." Gordon does not produce her own affidavit in support of her claim, much less any other supporting affidavits. "[I]n cases involving post-conviction collateral relief, where a party offers only h[er] affidavit, then h[er] ineffective-assistance-of-counsel claim is without merit." *Thomas v. State*, 159 So. 3d 1212, 1215-16 (¶10) (Miss. Ct. App. 2015) (quoting *Fortenberry v. State*, 151 So. 3d 222, 225 (¶10) (Miss. Ct. App. 2014)). Also, as noted by the State, nothing in the record supports Gordon's assertion that Piazza did not put forth evidence of Gordon's mental illness.

¶24. To the contrary, as discussed *supra*, Piazza filed two motions in the circuit court requesting that Gordon be examined by a psychiatrist. The circuit court granted these motions, and both Dr. Lott and Dr. Webb evaluated Gordon as to her competency to stand trial and as to her sanity at the time of her crimes. The doctors opined that Gordon was competent to stand trial. The doctors also opined that Gordon had the ability to know the nature and quality of her actions and the difference between right and wrong in relation to her actions at the time of her crimes.[6]

¶25. Finally, during her plea hearing, Gordon confirmed that she was satisfied with Piazza's representation and that no one threatened her into pleading guilty.

| THE COURT: | Okay. Has Mr. Piazza gone over these rights with you? |
| --- | --- |
| THE DEFENDANT: | Yes, sir. |

---

[6] Dr. Webb reported that Gordon knew the quality of her actions at the time of both offenses. Dr. Lott reported that Gordon had the ability to know the quality of her actions at the time she shot her boyfriend but that he was unable to render an opinion with certainty regarding Gordon assaulting the officer in the jail.

13

| THE COURT: | Have you been satisfied with his representation? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Do you feel like he's done those things that were reasonably necessary in order to defend you or present your side of these charges? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Okay. Has anyone threatened you in any way or promised you anything in order to get you to plead guilty today? |
| THE DEFENDANT: | No, sir. |

Taking all of this into consideration, we find that Gordon's ineffective assistance of counsel claim is without merit. Because we find that both of Gordon's claims lack merit, we affirm the circuit court's denial of Gordon's PCR motion.

¶26. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND McCARTY, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**