## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2017-CA-00086-COA

GREG MASSEY, AS PERSONAL REPRESENTATIVE AND FOR AND ON BEHALF OF THE ESTATE AND WRONGFUL DEATH BENEFICIARIES OF CAROL MASSEY, DECEASED

APPELLANT

v.

OASIS HEALTH & REHAB OF YAZOO CITY, LLC D/B/A OASIS HEALTH & REHAB OF YAZOO CITY AND CORETTA CARTER

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 11/09/2016 |
| TRIAL JUDGE: | HON. JANNIE LEWIS-BLACKMON |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN F. HAWKINS |
| | JASON MATTHEW KIRSCHBERG |
| ATTORNEYS FOR APPELLEES: | ANDREW SUTTON BULLOCK |
| | WILLIAM EUGENE GRUBBS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 09/04/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     This is another case about an arbitration agreement between a nursing home and a resident.[1] The arbitration agreement in this case was separate from the admission agreement between the resident and the facility. In addition, the arbitration agreement's cover page

---

[1] This Court and the Mississippi Supreme Court have decided about thirty such cases in the past thirteen years.

clearly stated that the agreement was "voluntary and not a condition for admission" to the facility and that the resident could withdraw her consent to arbitrate for any reason within thirty days of signing the agreement.

¶2. The resident, Carol Massey, and her husband, Greg Massey, both signed the arbitration agreement, and they did not exercise their right to cancel the agreement. But after Mrs. Massey passed away, Mr. Massey filed a wrongful death lawsuit in the Yazoo County Circuit Court against the facility, Oasis Health & Rehab of Yazoo City (Oasis), and its director of nursing, Coretta Carter. Oasis and Carter then filed a motion to compel arbitration. In response, Massey alleged that the arbitration agreement was unconscionable and that the admission agreement superseded and nullified the arbitration agreement. The circuit court found that the arbitration agreement was valid and enforceable and granted the motion to compel arbitration. We find no error and affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. Carol Massey was admitted to Oasis in March 2014. Around the time of her admission, she and her husband, Greg Massey, both signed an admission agreement and a separate arbitration agreement. In various places, the agreements or the parties' signatures are dated March 3, 4, 5, or 14, 2014. The record contains no explanatory affidavits, so it is unclear whether the agreements were signed on different days or in a particular order. The record also contains no information about the circumstances of Mrs. Massey's admission or the age or physical or mental condition of either Mr. or Mrs. Massey at the time of her admission. All we know is that both of the Masseys signed both agreements.

2

¶4.     The cover page of the arbitration agreement states:

**EXPLANATION
OF
BINDING ARBITRATION AGREEMENT**

**PLEASE READ CAREFULLY**

Under federal and most state laws, two or more parties may agree in writing for the settlement of any disputes through binding arbitration. Arbitration is a method for resolving disputes without involving the courts. This is often referred to as an alternate dispute resolution mechanism that may be more flexible than the court system, and may also be a less expensive and faster alternative for reaching a resolution of issues between parties. In using arbitration proceedings, the disputes are heard by private individuals called arbitrators. The arbitrators are selected by the Resident and/or the Resident's Legal Representative and the Facility. The decision of the arbitrators binds both parties and is final and nonappealable. By entering into this Binding Arbitration Agreement, the parties are giving up and waiving their right to have any claim decided in a court of law before a judge and/or jury.

Please read the attached Resident and Facility Binding Arbitration Agreement very carefully and ask any questions you may have. You may also feel free to consult with an attorney of your choice before signing the attached Agreement. Signing the Agreement is voluntary and not a condition for admission. The Resident may withdraw his or her consent to arbitrate the Resident's claim by notifying the Facility in writing within thirty days after the Resident's signing of the Agreement.

The headings of the cover page were in large, bold font in all capital letters. Greg Massey initialed the cover page, indicating that he had read it or had it explained to him.

¶5.     The body of the arbitration agreement, which immediately follows the cover page, provides in relevant parts:

**RESIDENT AND FACILITY**

**BINDING ARBITRATION AGREEMENT
("Agreement")**

3

I.     The following is an agreement that any and all claims, disputes and/or controversies between the Undersigned and the Facility shall be resolved by binding arbitration. . . . The parties expressly agree and voluntarily enter into this Binding Arbitration Agreement (the "Agreement"). Further, the Undersigned and the Facility acknowledge and agree that the parties have entered into an Admissions Agreement. The Undersigned and the Facility further acknowledge that the Admissions Agreement evidences a transaction involving interstate commerce . . . . Therefore intending to be legally bound, the Undersigned and the Facility agree that the Federal Arbitration Act . . . ("FAA") will govern this Agreement.

**BINDING ARBITRATION**

II. (a)  Unless otherwise agreed by the parties, the arbitration hearing shall be conducted before a panel of three arbitrators, (selected from the JAMS, The Resolution Experts® ("JAMS") Panel), or another set of arbitration rules to which the parties agree. . . . The arbitration shall be conducted at a place agreed upon by the parties, or in the absence of such agreement, in the city in which the facility is located. The arbitration hearing and other proceedings relative to the arbitration of the dispute or controversy, including discovery, shall be conducted in accordance with the JAMS Comprehensive Arbitration Rules & Procedures that do not conflict with the FAA (unless otherwise modified herein) which are hereby incorporated into this Agreement, and not by a lawsuit or resort to court process.

(b)     The parties agree that damages awarded, if any, in arbitration conducted pursuant to this Agreement shall be determined in accordance with the provisions of the law of the state where this contract is entered applicable to a comparable civil action. The arbitration panel shall have authority to award equitable relief (i.e. relief other than monetary), should the arbitrators so decide.

III.     Expenses of the arbitration shall be shared equally by the parties to this Agreement. All matters relating to the arbitration, the arbitration proceedings and the arbitration award, shall remain confidential between the parties. In consideration for this mutual agreement, the parties acknowledge that they will mutually benefit from the speedy and efficient resolution of the dispute or controversy which binding arbitration is expected to provide, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by all parties hereto.

IV.     The Undersigned and the Facility agree that the scope of this agreement

4

includes all claims, disputes and/or controversies between the Undersigned and the Facility.

. . . .

## ACKNOWLEDGMENTS

I.      In the event that any portion of this Agreement will be determined to be invalid or unenforceable, the remainder of this Agreement will be deemed to continue to be binding upon the parties hereto in the same matter as if the invalid or unenforceable provision were not a part of the Agreement.

II.     The Undersigned, by signing this Agreement, also acknowledges that the Undersigned has been informed that:

(a)     Care, diagnosis or treatment will be provided whether or not the Undersigned signs the Agreement to arbitrate;

(b)     The execution of this Agreement is not a precondition to receiving medical treatment or for admission to the Facility;

(c)     The Agreement shall not be submitted to the Resident for approval when the Resident's condition prevents the Resident from making a rational decision whether or not to agree;

(d)     The decision whether or not to sign the Agreement is solely a matter for the Undersigned's determination without any influence;

(e)     The Agreement waives the Undersigned's right to a trial in court, before a judge and/or a jury, for all disputes including those at law or in equity, subject to binding arbitration under this Agreement.

(f)     The Undersigned has the right to seek legal counsel concerning execution of this Agreement.

(g)     The Undersigned has received two (2) copies of this Agreement and acknowledges that the terms have been explained to him/her or his/her designee by a representative of the Facility.

(h)     The Undersigned has had an opportunity to ask questions about

5

this Agreement.

(i) The undersigned has had an opportunity to review the JAMS Comprehensive Arbitration Rules & Procedures made available to the undersigned before signing this Agreement.

(j) No provision of this Agreement is intended to waive or extend applicable Statute of Limitations provided by state law.

¶6. Next, the resident's "right to cancel" the arbitration agreement is set out on a separate page within the agreement:

**RESIDENT'S RIGHT TO CANCEL RESIDENT AND FACILITY BINDING ARBITRATION AGREEMENT**

I. (a) The Undersigned have the right to cancel this Agreement by notifying the Facility in writing within thirty (30) days after the Undersigned's signing of the Agreement.

(b) The Undersigned may cancel this Agreement by merely writing "CANCELLED" on the face of one of the Undersigned's copies of the Agreement, signing their name underneath, and mailing, by certified mail, return receipt requested, the copy to the Facility within the thirty-day period.

¶7. Greg Massey initialed each page of the arbitration agreement, including the notice of the "right to cancel" the agreement, to affirm that he had read the information and/or had it explained to him. Finally, Carol Massey and Greg Massey both signed on the signature page of the agreement. Immediately above their signatures, the agreement states in all capital letters: "The Undersigned acknowledge that each of them has read this entire Agreement and understands that by signing this Agreement each has waived his/her right to a trial before a judge and/or a jury, and that each of them voluntarily consents to all of the terms of this Agreement."

¶8. The Masseys also both signed a separate "Admission Agreement" that addressed

6

payments to the facility, nursing and physician care, and other matters. As discussed below, Massey alleges that several provisions of the admission agreement are unconscionable.

¶9.    Around the time the Masseys signed the arbitration agreement and the admission agreement, Mrs. Massey was admitted to the facility. The Masseys did not exercise the right to cancel the arbitration agreement within thirty days.

¶10.    Mrs. Massey passed away on August 31, 2014. Mr. Massey subsequently served Oasis and its director of nursing, Coretta Carter, with a notice of claim, *see* Miss. Code Ann. § 15-1-36 (Rev. 2012), and then filed a wrongful death lawsuit against Oasis and Carter in the Yazoo County Circuit Court. Mr. Massey's complaint alleged that Oasis's "nursing staff negligently allowed Ms. Massey to endure multiple falls" that resulted in injuries and pain and suffering and ultimately caused or contributed to her death.

¶11.    Oasis and Carter filed a motion to compel arbitration.[2] Massey opposed the motion, arguing that the arbitration agreement was unconscionable and that the admission agreement superseded and nullified the arbitration agreement.[3] The circuit court found that the arbitration agreement was valid and enforceable and granted Oasis's motion to compel

_____

[2] The arbitration agreement expressly applies to all claims against employees of Oasis. Massey does not argue that the agreement does not apply to claims against Carter; nor does he challenge the agreement on any other ground that relates to Carter specifically. Accordingly, our discussion of the agreement's validity and enforceability applies equally to both defendants, and we omit further discussion of Carter.

[3] The arbitration agreement expressly applies to Mr. Massey as a signatory to the agreement. It also applies to Mrs. Massey's successors, heirs, trustees and representatives, including the personal representative or executor of her estate. There is no argument that the arbitration agreement does not apply to this wrongful death lawsuit. *See Cleveland v. Mann*, 942 So. 2d 108, 117-19 (¶¶34-43) (Miss. 2006) (holding that a valid arbitration agreement signed by the decedent binds wrongful death beneficiaries).

7

arbitration. Massey then filed a motion to alter or amend the judgment, *see* Miss. R. Civ. P. 59(e), which essentially asked the court to reconsider its ruling. Oasis filed a response, and the circuit court denied Massey's motion. Massey then filed a notice of appeal.

**ANALYSIS**

¶12. On appeal, Massey argues that the arbitration agreement is unconscionable and that the admission agreement superseded and nullified the arbitration agreement. We address these arguments below. However, we must first address a potential issue of this Court's appellate jurisdiction.

## I. Appellate Jurisdiction

¶13. Before addressing the merits of the appeal, we must first determine whether we have jurisdiction to decide the appeal. Specifically, we must determine whether Massey's notice of appeal was timely. "A timely-filed notice of appeal is a jurisdictional prerequisite to invoking this Court's review . . . ." *Calvert v. Griggs*, 992 So. 2d 627, 631 (¶9) (Miss. 2008). Oasis has not challenged the timeliness of the appeal, but "an appellate court must address issues of jurisdiction on its own motion." *Hamilton v. Southwire Co.*, 191 So. 3d 1275, 1279 (¶15) (Miss. Ct. App. 2016).

¶14. Mississippi Rule of Appellate Procedure 4(a) provides that, "[e]xcept as provided in Rules 4(d) and 4(e), in a civil or criminal case in which an appeal . . . is permitted by law as of right . . . , the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from." M.R.A.P. 4(a). An order compelling arbitration is appealable as of right. *Sawyers v. Herrin-*

8

*Gear Chevrolet Co.*, 26 So. 3d 1026, 1034 (¶19) (Miss. 2010). In this case, the circuit court entered its order compelling arbitration on November 9, 2016. Therefore, Massey's notice of appeal originally was due on December 9, 2016.

¶15. However, Rule 4(d) provides that the timely filing of certain motions will extend the time for filing a notice of appeal. If a party "files a timely motion" to alter or amend the judgment pursuant to Mississippi Rule of Civil Procedure 59, the time for appeal runs from the date of the entry of the order disposing of the Rule 59 motion. M.R.A.P. 4(d).

¶16. As noted above, Massey did file a Rule 59 motion to alter or amend the judgment. However, Massey's motion was not "timely." "A motion to alter or amend the judgment shall be filed not later than ten days after entry of the judgment." M.R.C.P. 59(e). Moreover, "[t]he trial court has no authority or discretion to extend the 10-day time period." *Id.*, advisory committee note. The circuit court entered its order compelling arbitration on November 9, 2016, and the tenth day fell on Saturday, November 19, 2016, so any motion to alter or amend the judgment was due on Monday, November 21, 2016. *See* M.R.C.P. 6(a). Massey filed his motion to alter or amend the judgment on Tuesday, November 22, 2016—one day too late. Massey apparently mailed the motion to the clerk on Friday, November 18, 2016, but it was not *filed* until November 22. *See* M.R.C.P. 5(e)(1) ("The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court . . . ."); *Bolton v. Illinois Central R.R. Co.*, 218 So. 3d 311, 313 (¶8) (Miss. Ct. App. 2017) (explaining that a paper is not "filed" until the clerk actually receives it).

¶17. The circuit court denied Massey's motion to alter or amend the judgment on December 15, 2016, and Massey filed his notice of appeal on January 11, 2017. Thus, Massey filed his appeal within thirty days of the circuit court's ruling on his (untimely) motion to alter or amend the judgment, but *sixty-three* days after entry of the order compelling arbitration. This raises a question as to our appellate jurisdiction because an untimely Rule 59 motion "does not toll the thirty-day time period to file a notice of appeal." *Woods v. Victory Mktg. LLC*, 111 So. 3d 1234, 1236 (¶8) (Miss. Ct. App. 2013). Therefore, Massey's attempt to appeal from the underlying order compelling arbitration also appears to be untimely. *See id.* Moreover, our Supreme Court has held that Rule 59(e)'s ten-day deadline and the thirty-day deadline for filing a notice of appeal are "absolute" and "inflexible" and may not be extended in civil cases. *Wilburn v. Wilburn*, 991 So. 2d 1185, 1191 (¶11) (Miss. 2008).

¶18. However, in a prior case involving materially identical circumstances, the Mississippi Supreme Court treated the appeal as timely and exercised jurisdiction. In *Wilburn*, the chancery court entered an appealable order on June 1, 2007, and the appellant (Chasity) filed a Rule 59(e) "motion for reconsideration" on June 12, 2007. *Id.* at 1191 (¶12) & n.11. Under Rule 59(e), Chasity filed her motion one day too late. *Id.* at 1191 (¶12). The chancery court denied Chasity's Rule 59 motion on July 19, 2007, and Chasity then filed a notice of appeal on August 9, 2007—*i.e.*, within thirty days of the denial of her Rule 59 motion, but *sixty-eight* days after the entry of the underlying order that she sought to appeal. *Id.* at 1190-91 (¶¶8, 12). The appellee (William) argued that Chasity's Rule 59 motion and the appeal

10

were both untimely, and the Supreme Court agreed that Chasity's Rule 59 motion "was untimely." *Id.* at 1191 (¶¶12-13). However, the Supreme Court also found that William failed to object to the Rule 59 motion as untimely when it was filed in the chancery court. *Id.* The Supreme Court further held that William was "procedurally barred from raising this issue for the first time on appeal." *Id.* at (¶13). The Court then addressed the merits of the appeal and reversed and remanded on the merits. *Id.* at 1194-95 (¶¶20-25). In substance, it appears that the Supreme Court *deemed* Chasity's Rule 59 motion timely because William failed to raise the issue in the chancery court, which meant that her appeal was also timely and that the Court had appellate jurisdiction.

¶19. This Court subsequently addressed a similar issue. In *Walker v. May*, 166 So. 3d 613 (Miss. Ct. App. 2015), we observed that, in our opinion, we lacked "jurisdiction to address the appeal" because the appellant's Rule 59 motion was untimely and, thus, did not toll the time for filing a notice of appeal. *Id.* at 614 (¶5); *see also id.* at 615 (¶9) ("[I]t is our position that this Court does not have jurisdiction to consider this appeal."). Nonetheless, we stated that we would "review[] the merits of [the] appeal" because "the Mississippi Supreme Court ha[d], on one occasion, addressed the merits of such an appeal." *Id.* at 614 (¶5). We then discussed *Wilburn*, and we noted that, just as in *Wilburn*, the appellee in our case "did not object to the timeliness" of the Rule 59 motion in the circuit court. *Id.* at 615 (¶¶8-9). Therefore, "in deference to the [S]upreme [C]ourt's holding in *Wilburn*," we addressed the merits of the appeal. *Id.* at (¶9). We then affirmed the judgment of the circuit court—rather

11

than dismissing the appeal for lack of jurisdiction. *Id.* at 614, 617 (¶¶5, 16-17).[4]

¶20.    As in *Walker*, this Court is bound to follow the Supreme Court's holding in *Wilburn*.[5] Here, just as in *Wilburn*, Massey filed his Rule 59 motion one day too late, and Oasis responded to the motion on the merits—without objecting to the motion as untimely. After the circuit court denied Massey's Rule 59 motion, Massey filed a notice of appeal. Just as in *Wilburn*, Massey filed his notice of appeal within thirty days of the order denying his Rule 59 motion, but more than sixty days after entry of the underlying order. As to the issue of appellate jurisdiction, there is no material difference between this case and *Wilburn*. Under *Wilburn*, we have jurisdiction to address the appeal and the merits of the underlying order compelling arbitration.

## II.    Unconscionability

¶21.    Massey's primary argument on appeal is that the arbitration agreement is unenforceable because it is unconscionable. Massey's unconscionability claim has two sub-arguments:  (1) the arbitration agreement itself is unconscionable and (2) the arbitration agreement and admission agreement should be treated as if they were a single "integrated"

---

[4] More recently, in *Carter v. Carter*, 204 So. 3d 747 (Miss. 2016), the Supreme Court not only discussed *Wilburn*'s holding but also quoted *Walker*'s statement that this Court would follow the "holding in *Wilburn*." *Carter*, 204 So. 3d at 754 (¶31). The issue in *Carter* was different than the issue raised in *Wilburn*, *Walker*, and this case. However, *Carter* specifically cited the relevant holdings of both *Wilburn* and *Walker* without any suggestion of disapproval.

[5] *See, e.g.*, *Cahn v. Copac Inc.*, 198 So. 3d 347, 358 (¶35) (Miss. Ct. App. 2015) ("[T]his Court does not have the authority to overrule or ignore [S]upreme [C]ourt precedent."); *Rivera-Guadiana v. State*, 71 So. 3d 1221, 1224 (¶14) (Miss. Ct. App. 2011) ("[W]e must follow [S]upreme [C]ourt precedent . . . .").

12

contract, and certain provisions of the admission agreement are unconscionable, rendering the entire integrated contract unconscionable. We address these arguments in turn below. In doing so, we apply generally applicable principles of Mississippi contract law and the Federal Arbitration Act, as interpreted by the United States Supreme Court. *See, e.g.*, *Smith v. Express Check Advance of Miss. LLC*, 153 So. 3d 601, 606 (¶¶9-11) (Miss. 2014).

## A. The Federal Arbitration Act

¶22. Section 2 of the Federal Arbitration Act (FAA) provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012).[6] The United States Supreme Court has held that the FAA establishes "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The Supreme Court has also stated that the Act "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within [its] coverage." *Id.*

¶23. The FAA "requires courts to place arbitration agreements on equal footing with all

---

[6] The arbitration agreement specifically states that it is governed by the FAA, and the parties do not dispute that the FAA applies. The United States Supreme Court has held that the FAA reflects "the broadest permissible exercise of Congress' Commerce Clause power" and applies to all arbitration agreements in transactions that affect interstate commerce. *Citizens Bank v. Alafabco Inc.*, 539 U.S. 52, 56 (2003). The Act "includes no exception for personal-injury or wrongful-death claims" against nursing homes. *Marmet Health Care Ctr. Inc. v. Brown*, 565 U.S. 530, 532 (2012); *see also NC Leasing LLC v. Junker*, 172 So. 3d 155, 159 (¶10) (Miss. 2015) (holding that the FAA governs arbitration agreements between nursing homes and residents).

13

other contracts." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017). This means that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, the United States Supreme Court has held that state law may be applied to arbitration agreements only

> *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [section 2 of the FAA]. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable . . . .

*Perry*, 482 U.S. at 492 n.9 (citations omitted). Therefore, a state court cannot declare, as a matter of "public policy," that pre-dispute arbitration agreements will not be enforced in cases involving personal injury or wrongful death claims against a nursing home. *Marmet Health Care Ctr.*, 565 U.S. at 532-33. The FAA also would preempt a rule that such agreements are per se "unconscionable." *See id.* at 533-34.

¶24. The United States Supreme Court has also held that the FAA establishes a federal "rule of severability." *See Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 445-47 (2006) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). This means that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Id.* at 445. Therefore, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the

14

arbitrator in the first instance." *Id.* at 445-46. This rule of "arbitration law applies in state as well as federal courts." *Id.* at 446.

¶25. Under state and federal law, a motion to compel arbitration requires "a two-pronged inquiry." *Smith*, 153 So. 3d at 606 (¶11). First, the court must determine whether the dispute is within the scope of an arbitration agreement between the parties. *Id.* Second, the court must determine whether any "legal constraints external to the parties' agreement" preclude the court from enforcing the parties' agreement to arbitrate the dispute. *Id.* (quoting *Rogers-Dabbs Chevrolet-Hummer Inc. v. Blakeney*, 950 So. 2d 170, 173 (¶12) (Miss. 2007)); *accord Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 628 (1985)).

¶26. Here, the parties' broad arbitration agreement applies to "all claims, disputes and/or controversies between" them. There is no dispute that the agreement applies to Massey's negligence and wrongful death claims against Oasis and Carter. *See supra* nn.2-3. Accordingly, we proceed to the second prong of our inquiry, which brings us to Massey's unconscionability claims.

### B. Unconscionability

¶27. "Under [the second] prong, state contract defenses may invalidate the agreement to arbitrate as they would any other contractual provision." *Smith*, 153 So. 3d at 606 (¶11). This includes the defense of unconscionability, provided that it is the same generally applicable doctrine applicable to any other contract. *See* 9 U.S.C. § 2; *Marmet Health Care Ctr.*, 565 U.S. at 533-34; *Doctor's Assocs.*, 517 U.S. at 687; *Perry*, 482 U.S. at 492 n.9. "But because of the national policy favoring arbitration, the party opposing arbitration bears the

burden to prove that a contract defense applies in the particular case." *Smith*, 153 So. 3d at 606 (¶11).

¶28.    "Unconscionability can be procedural or substantive." *Covenant Health & Rehab. of Picayune LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699 (¶12) (Miss. 2009). In Mississippi, a contract or term will be declared invalid if it is *either* procedurally *or* substantively unconscionable. *See, e.g.*, *Sanderson v. Sanderson*, 170 So. 3d 430, 434-37 (¶¶14-23) (Miss. 2014); *MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 177 (¶29) (Miss. 2006); *E. Ford Inc. v. Taylor*, 826 So. 2d 709, 717 (¶¶21-22) (Miss. 2002).[7]

### 1.    Procedural Unconscionability

¶29.    "Procedural unconscionability looks beyond the substantive terms which specifically define a contract and focuses on the circumstances surrounding a contract's formation." *Vicksburg Partners L.P. v. Stephens*, 911 So. 2d 507, 517 (¶24) (Miss. 2005), *overruled on other grounds by Moulds*, 14 So. 3d at 706 (¶35). "Procedural unconscionability is established by showing a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Smith*, 153 So. 3d at 609 (¶24) (quotation marks omitted). "Contracts of adhesion . . . can be procedurally unconscionable." *La. Extended Care Ctrs. LLC v. Bindon*, 180 So. 3d 791, 795 (¶11) (Miss. Ct. App. 2015). However, our Supreme Court has made clear that

---

[7] Most states, in contrast, require a party challenging a contract or a term as unconscionable to prove both procedural and substantive unconscionability. *See, e.g.*, Russell Korobkin, *Bounded Rationality, Standard Form Contracts, and Unconscionability*, 70 U. Chi. L. Rev. 1203, 1256 & n.196 (2003).

"[c]ontracts of adhesion are not automatically unconscionable." *Caplin Enters. Inc. v. Arrington*, 145 So. 3d 608, 615 (¶15) (Miss. 2014). "A contract of adhesion has been described as one that is drafted unilaterally by the dominant party and then presented on a take-it-or-leave-it basis to the weaker party who has no real opportunity to bargain about its terms." *Id.* (quotation marks omitted). Frequently, contracts of adhesion have some provisions "in extremely small print." *Id.*

¶30. The arbitration agreement at issue in this case is not procedurally unconscionable. It is not even a "contract of adhesion." The agreement made clear on the cover page that it was not a condition of admission to the facility. In addition, the agreement conspicuously and clearly explained that the resident could cancel the contract for any reason for thirty days after signing it. The agreement did not use fine print, and Greg Massey initialed each page. Put simply, Oasis offered the Masseys an optional arbitration agreement that they were free to reject without any loss of services or other consequences. The arbitration agreement was procedurally conscionable. *See Forest Hill Nursing Ctr. Inc. v. McFarlan*, 995 So. 2d 775, 785 (¶¶33-34) (Miss. Ct. App. 2008) (holding that an arbitration agreement that made clear that it was not a precondition to admission to the nursing home was not procedurally unconscionable).

¶31. Moreover, Massey presented no evidence of "the circumstances surrounding [the] contract's formation." *Vicksburg Partners*, 911 So. 2d at 517 (¶24). Massey's appellate brief attaches a letter from the American Bar Association to the Centers for Medicare and Medicaid Services, which makes some broad generalizations about the process of admission

17

to a nursing home. However, that letter tells us nothing about the facts of this case. All that the record in this case shows is that Mr. and Mrs. Massey both signed the agreement, Mr. Massey initialed each page of the agreement, the agreement was not a condition of admission to the facility, and the Masseys were free to cancel the agreement for any reason for thirty days after they signed it. In the absence of some evidence of unfairness or a lack of voluntariness in the contract formation process, Massey cannot possibly show that the agreement is procedurally unconscionable. *See Smith*, 153 So. 3d at 609-10 (¶¶21-28); *McFarlan*, 995 So. 2d 785 (¶34).

## 2. Substantive Unconscionability

¶32. Substantive unconscionability must mean more than just "a judge's subjective conclusion that the contract is not fair. Fairness is for the parties to decide. That is why the doctrine of unconscionability has applied to only the most egregious of contractual situations." *Smith*, 153 So. 3d at 607 (¶13). A substantively "unconscionable contract is one such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Id.* at (¶14) (quoting *Terre Haute Cooperage v. Branscome*, 203 Miss. 493, 503, 35 So. 2d 537, 541 (1948)). A substantively unconscionable contract is one that "affronts the sense of decency" and is "so unreasonably favorable to one party that [it] imposes oppressive terms on the weaker part." *Id.* at 607-08 (¶15) (quoting *Moulds*, 14 So. 3d at 699 (¶11)). Our Supreme Court has also stated that it is "easier to prove" substantive unconscionability if the allegedly unconscionable contract is a "contract of adhesion." *Moulds*, 14 So. 3d at 701 (¶19) (quoting *Vicksburg Partners*, 911

18

So. 2d at 523 (¶40)). As discussed above, the arbitration agreement in this case is *not* a contract of adhesion.

### i. The Arbitration Agreement

¶33. Massey claims that the arbitration agreement is substantively unconscionable because it provides that the "[e]xpenses of the arbitration shall be shared equally by the parties." However, the agreement also provides for arbitration under the JAMS (Judicial Arbitration and Mediation Services, Inc.) rules, and JAMS's policy on "consumer arbitrations" states that "when a consumer initiates arbitration against [a] company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current [c]ourt filing fees." In the circuit court, Oasis acknowledged and agreed that the JAMS policy applies to this arbitration.[8] Accordingly, Massey will only be required to pay a $250 filing fee.

¶34. Nonetheless, Massey argues that the mere presence of the fee-sharing provision—even if it is inoperative—renders the entire arbitration agreement unconscionable. We disagree. Massey "offers no substantive factual or legal support" for his claim that a provision "requiring that the parties share equally the costs of arbitration is unconscionable" under Mississippi law. *Oasis Health & Rehab of Yazoo City LLC v. Smith*, 42 F. Supp. 2d 821, 827-28 (S.D. Miss. 2014) (rejecting a similar claim). Our Supreme Court rejected a similar claim in *Smith*, *supra*, stating:

> Nor do we find [the agreement] substantively unconscionable. . . . Smith bears the burden to show that the agreement is unconscionable, and, although she testified to her limited financial means, Smith failed to present any evidence

---

[8] The parties appear to agree that Massey is considered a "consumer" for purposes of the JAMS policy.

of the costs of arbitration. *Without that evidence, we cannot say that costs prohibit Smith from pursuing arbitration.*

*Smith*, 153 So. 3d at 608-09 (¶20) (emphasis added; footnote omitted).

¶35.   Massey similarly failed to offer any *evidence* of the cost of arbitration.  The record contains only counsel's arguments about the possible cost, and "arguments of counsel are not evidence."  *One 1970 Mercury Cougar v. Tunica Cty.*, 115 So. 3d 792, 796 (¶20) (Miss. 2013) (stating that "[n]o citation of authority is necessary for [this] fundamental proposition[]").  "Without that evidence, we cannot say that costs prohibit [Massey] from pursuing arbitration."  *Smith*, 153 So. 3d at 609 (¶20).[9]

¶36.   Therefore, the fee-sharing provision does not render the arbitration agreement unconscionable.  Furthermore, Oasis has conceded that the only fee that Massey will be required to pay to arbitrate will be the $250 filing fee.

### ii.      The Admission Agreement

¶37.   Massey also argues that the parties' arbitration agreement is unconscionable because various provisions contained in the separate admission agreement are unconscionable or "illegal."  Massey's argument relies on the principle that "when separate documents are executed at the same time, by the same parties, as part of the same transaction, they may be

---

[9] Massey relies on Justice Cobb's dissenting opinion in *Sanderson Farms Inc. v. Gatlin*, 848 So. 2d 828, 848-50 (¶¶64-70) (Miss. 2003) (Cobb, J., dissenting).  However, Justice Cobb specifically recognized that "the party challenging arbitration has the burden of showing it to be unconscionable, . . . the alleged unconscionability must be determined on a case-by-case basis, and . . . evidence based on other parties' experiences with arbitration or on average costs of arbitration is too speculative."  *Id.* at 849 (¶69).  In *Gatlin*, Justice Cobb was persuaded by *evidence* that the arbitration service had actually billed the plaintiff $11,000.  *See id.* at 840-41, 849 (¶¶36-37, 70).  Here, in contrast, Massey failed to present *any* evidence of the cost of arbitration.

construed as one instrument." *Sullivan v. Mounger*, 882 So. 2d 129, 135 (¶32) (Miss. 2004). However, we disagree that this principle of contract construction requires us to *invalidate* the parties' arbitration agreement based on terms of the separate admission agreement.

¶38.     The Supreme Court discussed this "integrated" or "global" transaction principle in *Sullivan v. Protex Weatherproofing Inc.*, 913 So. 2d 256 (Miss. 2005).  That case involved two contracts:  an asset purchase agreement under which Sullivan sold his business to a wholly owned subsidiary of ATX, and an employment contract between Sullivan and the same subsidiary.  *Id.* at 257 (¶¶3-4).  ATX was a party to the asset purchase agreement but not the employment contract, and only the employment contract contained an arbitration clause.  *Id.* at 257-58 (¶¶3-4, 11-12).  Nonetheless, Justice Dickinson, joined by three other justices, concluded that ATX could compel arbitration of Sullivan's claims for breach of the asset purchase agreement because the two contracts were part of one "integrated, or global, transaction."  *See id.* at 259-61 (¶¶20-32).  Justice Dickinson's opinion listed several facts as significant to this conclusion, including that (1) the asset purchase agreement specifically stated that Sullivan's execution of the employment contract "was a *condition precedent* to" closing under asset purchase agreement; (2) "[t]he [e]mployment [c]ontract was not only an exhibit to the [a]sset [p]urchase [a]greement but was specifically made an 'integral part' of the [a]sset [p]urchase [a]greement"; and (3) Sullivan characterized the employment contract as "*consideration* for the [a]sset [p]urchase [a]greement."  *Id.* at 260-61 (¶31).  Justice Randolph's separate opinion, also joined by three other justices, concluded that the two contracts addressed different issues, and even the clear interrelationship between them did

21

not establish that the parties intended to them to be treated as a single, integrated contract. *See id.* at 264-66 (¶¶50-56) (Randolph, J., concurring in part and dissenting part).

¶39.    Even applying the rationale of Justice Dickinson's opinion in *Sullivan*,[10] we conclude that the separate arbitration agreement and admission agreement in the present case cannot be "merged" and treated as if they were a single, integrated contract. "The primary purpose of *all* contract construction principles and methods is to determine and record the intent of the contracting parties." *Royer Homes of Miss. Inc. v. Chandeleur Homes Inc.*, 857 So. 2d 748, 752 (¶9) (Miss. 2003) (emphasis added). We determine the contract's "legal purpose and intent of the parties from an objective reading of the words employed in the contract." *Id.* We are "not at liberty to infer intent contrary to . . . the text at issue." *Id.*

¶40.    Unlike the contracts at issue in *Sullivan*, the arbitration agreement in the present case was not a "*condition precedent* to" admission to the facility, an "integral part" of the admission agreement, or "*consideration* for" the admission agreement. *Sullivan*, 913 So. 2d at 260-61 (¶31). Rather, the Masseys' arbitration agreement expressly stated that it was "voluntary and not a condition for admission." Moreover, the Masseys' arbitration agreement clearly stated they could cancel the agreement for any reason within thirty days of signing it. Had the Masseys exercised their unilateral right to cancel the arbitration agreement, Mrs. Massey still could have continued as a resident at the facility, and the separate admission agreement would have remained in effect. Each agreement clearly was

---

[10] In relevant part, the eight participating justices in *Sullivan* divided four-to-four. "[A] majority of all sitting judges is required to create precedent . . . ." *Buffington v. State*, 824 So. 2d 576, 580 (¶15) (Miss. 2002).

intended to operate as an independent, stand-alone agreement. Given the clear terms of the arbitration agreement, we cannot conclude that the parties intended for these two separate agreements to be treated as a single "integrated" contract.

¶41. Because the arbitration agreement and the admission agreement are independent contracts, we cannot hold that the arbitration agreement is unconscionable based on terms contained only in the admission agreement. As discussed above, the United States Supreme Court has held that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Cardegna*, 546 U.S. at 445. This means that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445-46. This rule "applies in state as well as federal courts." *Id.* at 446. This rule of federal arbitration law precludes us from refusing to enforce an arbitration agreement based on allegedly unconscionable or "illegal" terms contained in an entirely separate admission agreement.

¶42. We acknowledge that the admission agreement does include certain provisions that are substantially similar to some of the terms that our Supreme Court declared unconscionable in *Moulds*, *supra*. Some of these terms are irrelevant to Massey's wrongful death claims.[11] But clauses that purport to limit Oasis's liability clearly are unconscionable

---

[11] For example, Clause C5b purports to require the resident to indemnify and hold harmless Oasis for claims brought by any "visitor" who suffers an injury while visiting the resident, unless the injury is the result of Oasis's "willful misconduct." Clause C8 purports to waive any claims against Oasis for "criminal acts" committed by "any individual or individuals," including Oasis's own employees. These clauses are unenforceable, *see Moulds*, 14 So. 3d at 702 (¶20) & n.6, but they are also irrelevant to the claims asserted in Massey's complaint.

and unenforceable under Mississippi law.[12] Arbitrators cannot ignore clearly applicable Mississippi law. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 673-74 (2010). Therefore, these unconscionable terms cannot be enforced in arbitration.

¶43. However, *Moulds* is distinguishable because the arbitration agreement in *Moulds* was part of the admission agreement, a condition of admission to the facility, and a "contract of adhesion." *Moulds*, 14 So. 3d at 701 (¶19) & n.4. Here, in contrast, the arbitration agreement was a separate and voluntary agreement that was not a condition of Mrs. Massey's admission to the facility. Under generally applicable state contract law and federal arbitration law, unconscionable provisions of the admission agreement are not a basis for invalidating the parties' separate arbitration agreement.[13]

### III. The Admission Agreement's "Entire Agreement" Clause

¶44. Massey also makes an alternative argument that the admission agreement's "Entire Agreement" or "merger" clause supersedes the parties' arbitration agreement. That clause states:

---

[12] Clause C5a purports to waive liability for any injury that could have been avoided if the resident had contracted for supplemental private duty nursing. That clause is unconscionable and unenforceable. *See Moulds*, 14 So. 3d at 702 (¶20) & n.6. Clause C5c purports to waive liability for any claims that would have been covered by general and/or professional liability insurance. That clause is also unconscionable and unenforceable. *See id.* at 701-02 (¶20) & n.5.

[13] Massey also alleges that the admission agreement "illegally contracts" for nursing services and physician care below minimum standards set by state regulations. However, under the Federal Arbitration Act, we cannot refuse to enforce the arbitration agreement on the ground that the admission agreement is "illegal." *See generally Cardegna*, 546 U.S. at 442-49. Indeed, we could not do so even if the arbitration agreement was contained within the admission agreement. *See id.*

24

**4. Entire Agreement.** This Agreement constitutes the entire agreement among the Parties pertaining to the subject matter contained in it and supercedes all prior arrangements, representations and all understandings of the Parties. No supplement, modification or amendment of this Agreement shall be binding unless expressed as such and executed in writing by all the Parties.

Massey argues that the effect of this merger clause is to nullify the parties' "prior" arbitration agreement. We disagree.

¶45. To begin with, the precise order in which the two agreements were signed is not clear. As discussed above, the record contains no affidavits or any evidence other than the agreements. In the arbitration agreement, the signatures of Mr. Massey and an Oasis representative are dated March 3, 2014, whereas Mrs. Massey's signature is dated March 5, 2014. The admission agreement states that Mrs. Massey was admitted to the facility on March 4, 2014, but it is dated March 14, 2014. At the hearing in the circuit court, Oasis's counsel conceded that the March 14 date could be an "error" because Mrs. Massey was admitted ten days earlier. On appeal, Massey goes a step further, asserting that the March 14 date "is likely erroneous." Massey argues that the admission agreement likely was executed when Mrs. Massey was admitted on March 4. Massey then posits that the arbitration agreement was in effect *for only one day*. That is, he argues that the arbitration agreement was effective when he and an Oasis representative signed it on March 3, but then it was *nullified* when the admission agreement was (likely) signed on March 4. Mr. Massey does not address the effect of Mrs. Massey's signature on the arbitration agreement on March 5. Mr. Massey's theory appears to be that the agreement was already null and void by the time Mrs. Massey signed it. We also note that the arbitration agreement states that the parties

25

had "entered into" the admission agreement, implying that the admission agreement was signed first. *See supra* ¶5 (section I of the arbitration agreement).

¶46.    In any event, we conclude that the precise order and dates of the signatures are unimportant because the admission agreement's merger clause did not nullify the arbitration agreement regardless of the order in which the two agreements were signed. "As interpreted in Mississippi (and elsewhere), standard merger clauses like this are a means to solidify the parol-evidence rule." *Rifenburg Constr. Inc. v. Hatch Mott McDonald LLC*, No. 3:12-cv-813-DPJ-FKB, 2015 WL 2381136, at *2 (S.D. Miss. May 19, 2015). Our Supreme Court has stated that "the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations." *Grand Legacy LLP v. Gant*, 66 So. 3d 137, 145 (¶24) (Miss. 2011) (quoting *B.C. Rogers Poultry Inc. v. Wedgeworth*, 911 So. 2d 483, 490 (¶20) (Miss. 2005)). "Significantly, merger clauses are not generally interpreted as voiding previously existing contracts that are not part of the negotiated bargain memorialized in the subsequent agreement." *Rifenburg Constr.*, 2015 WL 2381136, at *3 (emphasis added) (citing *B.C. Rogers*, 911 So. 2d at 485-86, 489-90).

¶47.    In this case, there is nothing to suggest that the admission agreement was intended to void the separate arbitration agreement that the parties signed at or around the same time. The merger clause does not expressly void or supersede the arbitration agreement. Indeed, the admission agreement as a whole does not even mention arbitration or the arbitration agreement. The arbitration agreement, in contrast, does mention the admission agreement. It states that the parties had "entered into" a separate admission agreement, indicating an

26

intent that both agreements would remain in effect. Moreover, as discussed, the arbitration agreement also gave the Masseys thirty days to withdraw their consent to arbitrate by delivering a cancelled copy of the agreement to Oasis. This also contradicts Massey's argument that an admission agreement, executed at the same time or maybe a day later, was intended to cancel the arbitration agreement sub silentio.

¶48. We must determine a contract's "legal purpose and intent of the parties from an objective reading of the words employed in the contract," and we are "not at liberty to infer intent contrary to . . . the text at issue." *Royer Homes*, 857 So. 2d at 752 (¶9). Based on an objective reading of the words of these contracts, it is clear that the parties intended that the separate arbitration agreement would remain in effect. Nothing in the entire admission agreement "suggest[s] an intent to expand the merger clause beyond its well-recognized and routine purpose" of solidifying the parol evidence rule and barring evidence of "preliminary negotiations." *Rifenburg Constr.*, 2015 WL 2381136, at *3. That is, there is nothing to indicate that the admission agreement was intended to *void* the arbitration agreement that the parties signed at or near the same time. Accordingly, Massey's argument based on the merger clause is without merit.

## CONCLUSION

¶49. In summary, we hold: *First*, based on the Supreme Court's holding in *Wilburn*, 991 So. 2d at 1190-91 (¶¶11-13), we have jurisdiction to decide the appeal. *Second*, the arbitration agreement between the Masseys and Oasis is not procedurally unconscionable. It was not a condition of admission to the facility, and the Masseys could have rejected it,

27

even after they signed it, without any loss of services or other consequences. Moreover, Massey offered no evidence of a lack of knowledge or a lack of voluntariness in the contracting process. *Third*, Massey also failed to meet his burden of proving that the arbitration agreement's fee-sharing provision is unconscionable. Nonetheless, pursuant to JAMS's policy, Massey will have to pay only a $250 filing fee, and Oasis must pay all other arbitration fees. *Fourth*, Massey cannot attack the arbitration clause based on provisions of the admission agreement. The arbitration agreement and the admission agreement are separate agreements and cannot be recharacterized as one "integrated" or "global" contract. Under both state and federal law, the agreements' status as separate contracts cannot be ignored. *Fifth*, the admission agreement's merger clause did not void the arbitration agreement.

¶50. As our Supreme Court has stated, "Fairness is for the parties to decide. That is why the doctrine of unconscionability traditionally has applied only to the most egregious of contractual situations." *Smith*, 153 So. 3d at 607 (¶13). The most important fact in this case is that the arbitration agreement was voluntary and was not a condition of admission or any other service. The agreement could have been rejected, or even cancelled later, without consequence. The agreement is *not* a "contract of adhesion," and Massey presented no evidence of any unfairness or lack of voluntariness in the contracting process. On this record, we cannot allow Massey to disregard a contract that he was free and had every opportunity to simply decline in the first place.

¶51. **AFFIRMED.**

28

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR AND TINDELL, JJ., CONCUR. GREENLEE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., BARNES AND TINDELL, JJ.; WESTBROOKS, J., JOINS IN PART. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

**GREENLEE, J., SPECIALLY CONCURRING:**

¶52. I concur with the majority concerning the validity of the arbitration agreement. However, as the majority's opinion solidifies a change in course in determination of appellate jurisdiction, I would like to discuss this change and, therefore, specially concur.

¶53. Appellate courts, such as ours, are charged to address the presence of their own jurisdiction over each case. *E.g.*, *Gallagher v. City of Waveland*, 182 So. 3d 471, 474 (¶13) (Miss. Ct. App. 2015).

¶54. Before *Wilburn v. Wilburn*, 991 So. 2d 1185 (Miss. 2008), we specifically adhered to the language of the rules of civil procedure promulgated by our supreme court. Our Mississippi Rule of Appellate Procedure Rule 4(d), notes, "If any party files a timely motion of a type specified immediately below the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding." M.R.A.P. 4(d). Rule 4(d) then specifies those timely motions.

¶55. The Mississippi Rule of Civil Procedure pertinent to the case at hand is Rule 59(e). It reads, "A motion to alter or amend the judgment shall be filed not later than ten days after entry of the judgment." M.R.C.P. 59(e). Prior to *Wilburn*, our courts interpreted this rule to impact our jurisdiction. If a party filed a timely Rule 59 motion, then the time for appeal was tolled; on the other hand, if a party filed an untimely Rule 59 motion, then the time for appeal

29

was not tolled, and if notice of appeal was not filed within thirty days of the entry of the judgment, then the appellate court had no jurisdiction. *Telford v. Aloway*, 530 So. 2d 179, 181 (Miss. 1988) ("We interpret the ten day time limit set forth in Rule 59(b) to be jurisdictional and mandatory."); *In re A.M.A.*, 986 So. 2d 999, 1007 (¶14) (Miss. Ct. App. 2007) (holding that Rule 4(d) did not toll the time for appeal because the appellant did not file the Rule 59(a) motion until forty-two days after judgment); *Hill ex rel. Heirs of Florence Cobb v. McLaurin*, 769 So. 2d 257, 259 (¶9) (Miss. Ct. App. 2000) (holding an appeal was untimely because the Rule 59(e) motion was filed outside of the ten days allowed, which would have tolled the time to appeal).

¶56.    Our supreme court discussed the jurisdictional impact of timely-filed Rule 59 motions in *Wilburn*. In *Wilburn*, the court did not directly address the court's duty to determine the existence of its own appellate jurisdiction. In *Wilburn*, the appellant had filed a Rule 59 motion to reconsider more than ten days after entry of judgment. *Wilburn*, 991 So. 2d at 1191 (¶12). Because at the trial court level the appellee did not object to the untimely motion, the supreme court found that such objection before an appellate court had been waived. *Id.* at (¶13). Therefore, the appellant could not raise the issue for the first time on appeal. *Id.* The supreme court then proceeded to rule on the merits of the appeal.

¶57.    After *Wilburn*, we considered the case to have been "the only instance in which our supreme court has allowed such a review," *Walker v. May*, 166 So. 3d 613, 615 (¶8) (Miss. Ct. App. 2015), and showed hesitancy in embracing the *Wilburn* proposition. *Id.* (¶9) ("Accordingly, it is our position that this Court does not have jurisdiction to consider this

appeal. However, as May did not object to the timeliness of the motion, in deference to the supreme court's holding in *Wilburn*, we will briefly address the merits.").

¶58. In *Carter v. Carter*, 204 So. 3d 747 (Miss. 2016), our supreme court further amplified *Wilburn*'s holding that the lack of objection to an untimely Rule 59 motion procedurally bars an appellee from raising the issue of timeliness for the first time on appeal. *Id.* at 754 (¶31) (citing *Wilburn v. Wilburn*, 991 So. 2d 1185, 1190-91 (¶11) (Miss. 2008)).

¶59. In *Carter*, the supreme court approvingly cites the United States Supreme Court case of *Bowles v. Russell*, 551 U.S. 205, 214 (2007), for the assertion that "it is true that the 'timely filing of a notice of appeal in a civil case is a jurisdictional requirement.'" *Carter*, 204 So. 3d at 755 (¶32). In *Bowles*, 551 U.S. at 207, a litigant filed a notice of appeal outside of the statutorily authorized thirty-day period. The Court held that the time limit was jurisdictional in nature—rather than claim-processing—so it was not subject to forfeiture or waiver. *Id.* at 213. The Court emphasized that it had "long held that the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" *Id.* at 209 (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 54, 61 (1982) (per curiam); *Hohn v. United States*, 524 U.S. 236, 247 (1998); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314-15 (1988); *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 264 (1978)). By its discussion in *Carter*, our supreme court seemed to adopt the differential noted between claims-processing rules versus jurisdictional mandates found in federal caselaw, *Carter*, 204 So. 3d at 755 (¶¶33-34) (citing *Blue v. Int'l Bhd. of Elec. Workers Local Union 159*, 676 F.3d 579, 584-85 (7th Cir. 2012); *Lizardo v. United States*, 619 F.3d 273, 277-78 (3d Cir. 2010); *Nat'l*

31

*Ecological Found. v. Alexander*, 496 F.3d 466, 475-76 (6th Cir. 2007)), and further amplified in *Bowles*.

¶60.    We recognize that our Rules of Civil Procedure were modeled on the Federal Rules of Civil Procedure. *See generally* Guthrie T. Abbott, *The Proposed Mississippi Rules of Civil Procedure*, 49 Miss. L.J. 285, 289 (1978). Because of this, our courts may look for guidance as to how Federal courts have construed Federal rules. *Nichols v. Tubb*, 609 So. 2d 377, 383 (Miss. 1992).

¶61.    As the state's appellate courts had—before *Wilburn* and *Carter*—routinely found that the time to file a Rule 59 motion was binding on our jurisdictional requirement of a timely-filed notice of appeal, the treatment provided in *Wilburn* and *Carter* is a departure from established precedent. Our supreme court seems to recognize, as the United States Supreme Court did in *Bowles*, that "procedural rules adopted by the Court for the orderly transaction of its business are not jurisdictional and can be relaxed by the Court in the exercise of its discretion . . . ." *Bowles*, 551 U.S. at 212 (quoting *Schacht v. United States*, 398 U.S. 58, 64 (1970)). New Mississippi ground is being broken; I therefore specially concur.

**IRVING, P.J., BARNES AND TINDELL, JJ., JOIN THIS OPINION. WESTBROOKS, J., JOINS THIS OPINION IN PART.**